IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 10-cv-01901-WYD

ANGELA G. GASKELL,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's claim for Social Security Disability Insurance Benefits and Supplemental Security Income. For the reasons stated below, this case is reversed and remanded for further fact finding.

I.    <u>INTRODUCTION AND BACKGROUND</u>

Plaintiff alleges that she is disabled by severe symptoms and complications associated with Systemic Lupus Erythematosus ["SLE"]. She asserts that her SLE primarily affects her joints and skin, but she also suffers from progressive kidney damage. As is common with SLE, Plaintiff also asserts that she experiences severe and unpredictable flare-ups, followed by periods of relative improvement. She was initially diagnosed with SLE in May 2004. (Transcript ["Tr."] 286.) She began treating with Dr. Rivadeneira, a rheumatology specialist, in August 2004. (*Id.* 421).

Dr. Rivadeneira treated Plaintiff on a regular basis from August 2004 continuing through the time of the hearing before the administrative law judge ["ALJ"].

Plaintiff was twenty-nine years of age on the date of the ALJ's decision. (Tr. 126). She completed high school and college (*id.* 152, 630), and has past relevant work as a professional dancer and office assistant. (*Id.* 148.)

Plaintiff protectively applied for benefits on October 1, 2007. (Tr. 142.) She listed her onset date of disability as June 14, 2004. Her claims were denied initially on January 7, 2008, and upon reconsideration. (*Id.* 59, 77, 85.) ALJ Allan T. O'Sullivan held a hearing on September 10, 2009. (*Id.* 96). On October 8, 2009, the ALJ issued a decision finding that Plaintiff was not disabled under the Act. (*Id.* 11-20.)

As to the sequential evaluation, the ALJ found at step one of his decision that Plaintiff was insured for Title II benefits through March 31, 2011, and that she had not engaged in substantial gainful activity since her alleged onset date. (Tr. 13). At step two, the ALJ found that Plaintiff had severe impairments of SLE, skin eruptions, arthralgias, myalgias, and lupus nephritis Class III. (*Id.*) He also found, after analyzing the four broad functional areas required to be assessed for mental disorders, that Plaintiff's mental impairment of depression is not severe. (*Id.* 14.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled an impairment listed at 20 C.F.R., Pt. 404, Subpt. P, App. 1. (*Id.* 13-14.)

After examining the evidence, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged

symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (Tr. 19.) As to RFC, the ALJ found that Plaintiff was able to perform the full range of light work. (Tr. 15, 19.) In making this assessment, he gave "great weight" to the opinion of medical expert Dr. Cannon and adopted "in full" the more recent opinion of the non-examining State agency medical consultant. (*Id.* 19.)

The ALJ found at step four that Plaintiff was not disabled because she could do her past work as a receptionist as generally performed throughout the economy. (Tr. 20.) Accordingly, he found that Plaintiff was not disabled.

Plaintiff filed a timely request for review with the Appeals Council on October 23, 2009. (Tr. 6.) The Appeals Council issued an order denying the request for review on June 22, 2010. (*Id.* 1.) Accordingly, the ALJ's decision is the final decision of the Commissioner, and the case is ripe for review with this Court.

Plaintiff argues that the ALJ failed to consider or address the opinions from her treating physician and that he did not adequately analyze whether her condition meets the requirements of a "Listed Impairment." Plaintiff also asserts that the ALJ did not consider or discuss the opinions of two State agency psychologists regarding Plaintiff's mental impairments or the highly probative evidence from one of her former employers regarding her inability to work. It is also argued that the ALJ improperly determined that Plaintiff has no nonexertional impairments despite substantial evidence to the contrary. Finally, Plaintiff contends that this case must be remanded for consideration of an

additional opinion from her treating physician which was submitted to the Appeals

Council after the hearing.  I address these arguments below.

II.     ANALYSIS

    A.      Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to

determining whether the Commissioner applied the correct legal standard and whether

the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and*

*Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is

evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*

*v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of

evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d

802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record

or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.

1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for

reversal apart from substantial evidence."  *Thompson v. Sullivan*,  987 F.2d 1482, 1487

(10th Cir. 1993).

    B.      Whether the ALJ's Decision is Supported by Substantial Evidence

        1.      Whether the ALJ Erred in Not Properly Considering the Opinions of
             the Treating Physician

Plaintiff first argues that the ALJ erred in failing to consider or conduct the proper

analysis as to her treating rheumatologist Dr. Rivadeneira.  He opined that Plaintiff's

limitations are sufficiently severe as to preclude all work activity on a regular and continuing basis.  More specifically, he explained in a report dated December 17, 2007:

> [Ms. Gaskell's] condition has been associated with severe arthritis involving the small joints of her hands, wrists, elbows, knees, ankles and feet with swelling, erythema, warmth and stiffness to the point that she has been wheelchair-bound. In addition, she frequently (i.e.: several times a week) experiences constitutional symptoms that are typical of this disease such as extreme fatigue that force her to take bed rest and naps during the day. Other symptoms that often affect her include myalgias and chest pain, dyspnea with ambulation, low grade fevers and migraine headaches.
> Moreover, her disease is also associated with a skin disease characterized by recurrent skin lesions of the face and torso that are exacerbated by exposure to florescent light. These lesions are associated with burning discomfort and at times with pruritus and in her case have proven difficult to treat.
>
> Also, Ms. Gaskell's SLE is associated with short term memory loss and difficulties concentrating.
>
> This constellation of symptoms limits the patient's physical ability to perform daily activities such as focus, walk, sit, stand, bend, lift, push or pull repetitively or for long periods of time.

(Tr. 528-29.)  As a result of these problems, Dr. Rivadeneira stated, "I believe that she is unable to work at any job on a regular basis."  (Tr. 529).

> Similarly, on September 8, 2009, Dr. Rivadeneira stated:
>
> Her main symptoms consist of joint pain, stiffness, and swelling, myalgias, fatigue, headaches, chest pain, low grade fevers, depression, short term memory loss, interrupted sleep, irritability, skin rashes and photosensitivity.
>
> Her symptoms have been severe at times and have limited significantly the patient's ability to stand, walk or sit for long periods of time as well as to concentrate and perform her daily activities at work and school.

(Tr. 665.)  The ALJ did not consider or address Dr. Rivadeneira's opinions regarding Plaintiff's functional capacity.

The Tenth Circuit recently stated that its "case law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Id.* "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.* "But finding such deficiencies to resolve the controlling- weight question against a claimant does not end the inquiry." *Id.*

"Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330. "If this is not done, a remand is required." *Id.*

*Krauser* cited the relevant ruling, which explains:

Adjudicators must remember that a finding that a treating source medical opinion is not well-supported . . . or is inconsistent with the other substantial evidence in the case record *means only that the opinion is not entitled to 'controlling weight', not that the opinion should be rejected.* Treating source medical opinions are still entitled to deference and must be weighed using all

of the factors provided in [§§] 404.1527 1nd 416.927. *In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight*.

*Id.*, 638 F.3d at 1330 (quoting SSR 96-2p, 1996 WL 374188, at *4) (emphasis added). Thus, a deficiency as to the conditions for controlling weight *raises the question* of how much weight to give the opinion, it does not resolve the latter, distinct inquiry." *Id.* (emphasis in original).

In *Krauser*, the Tenth Circuit found that the ALJ's assessment of a treating physician's opinion was "patently inadequate for the distinct reason that it ends halfway through the required two-step analysis: the ALJ simply concluded that 'Dr. Lambert's opinion ... cannot be given controlling weight' and then *said no more about it." Id.* (emphasis in original). Here, however, the ALJ did not even discuss or consider the first step—whether Dr. Rivadeneira's opinions are entitled to controlling weight, let alone the second step. The fact that the ALJ did not properly weigh Dr. Rivadeneira's opinion as a treating physician is further substantiated by the fact that he stated that "the record does not contain any opinion from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." (Tr. 19.) The ALJ also erred in that he did not give specific, legitimate reasons for rejecting Dr. Rivadeneira's opinions. *Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008). Accordingly, this case must be remanded for a proper assessment and weighing of Dr. Rivadeneira's opinions.

The Commissioner asserts, however, that the ALJ stated that he considered the treating physician's opinions, carefully identified the medical evidence by exhibit

number, and referenced the exhibits that contained the opinions of Dr. Rivadeneira (even though he did not discuss them). As a result of this, the Commissioner argues that "it is apparent that the ALJ considered Dr. Rivadeneira's opinions and implicitly determined to give them no weight . . . for numerous legitimate reasons that were based on his review of the record as a whole." (Def.'s Resp. Br. at 15.) This is, however, plainly insufficient to satisfy the two-step test discussed above.

A similar argument was made and rejected in *Wade v. Astrue*, No. 07-6154, 2008 WL 193236 (10th Cir. Jan. 23, 2008) (unpublished). The Commissioner in that case argued that the ultimate weight assigned to opinion of a treating physician was "implicit" where the ALJ's RFC determination appeared to give the physician's opinion some credence. *Id.* at *3. The court rejected this argument, stating that "the "ALJ herself provided no such analysis." *Id.* Further, "the ALJ discussed *none* of the [§ 404.1527(d)] factors and made no finding as to weight." *Id.* The *Wade* Court concluded:

> "We cannot simply presume the ALJ applied the correct legal standards in considering Dr. [Herndon's] opinion. We must remand because we cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion."

*Id.* (quotation omitted); *see also Harper v. Astrue*, No. 10-5136, 2011 WL 2580336, at *3 n. 1 (10th Cir. June 30, 2011) (unpublished) (ALJ's statement that he had considered opinion evidence was a conclusory statement that did not satisfy his responsibility to give reasons for the weight he assigned to a treating physician's opinions).

The Commissioner also points to the fact that the ALJ gave great weight to the opinion of Dr. Cannon because it was more consistent with the evidence in the record.

(Tr. 19).  Dr. Cannon was a nonexamining "medical expert" who testified at the hearing based on her review and consideration of the evidence, including the testimony at the hearing.  (*Id.* 15, 57.)  Before relying on Dr. Cannon's opinion, however, the ALJ was first required to weigh and give deference to Dr. Rivadeneira's opinions as a treating physician.  Obviously, if on remand Dr. Rivadeneira's opinions are found to be entitled to controlling weight, the ALJ cannot choose to give greater weight to Dr. Cannon's opinions.  If Dr. Rivadeneira's opinions are not given controlling weight, the ALJ is required to examine Dr. Cannon's opinion to see if they outweigh Dr. Rivadeneira's opinions, not the other way around.  *Goatcher v. U.S. Dept. of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir. 1995).[1]  Also on remand, the ALJ should keep in mind that the opinion of an physician who has never seen the claimant is generally entitled to the least weight of all.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

It is further argued by the Commissioner that treating source opinions are not entitled to controlling weight or any special significance as to issues served to the Commissioner, such as opinions regarding whether an impairment meets or equals a listing, the RFC assessment, and the determination of whether a claimant is disabled.  The Commissioner improperly downplays the role of such evidence.  While the ALJ need not give controlling weight to a treating physician's opinion on such issues, "he must still provide an evaluation of the treating physician's opinion and state his reasons

---

[1]  I also note as to Dr. Cannon that the ALJ gave her opinion great weight "because it was more consistent with the evidence in the record".  (Tr. 19.) The ALJ erred, however, in that he did not state what evidence her opinion was consistent with, again leaving the Court unable to review this decision.  *See Krauser*, 638 F.3d at 1331; *Roblez v. Astrue*, No. 10-2500-SAC, 2011 WL 2580045, at *5 (D. Kan. June 28, 2011) (unpublished).

for either accepting or rejecting it". *Knight v. Astrue*, No. 09-1534, 2010 WL 2853668, at

*3 (July 21, 2010) (unpublished); *see also Castellano v. Sec'y of Health and Human

Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).  In deciding what weight to give these

opinion, the relevant regulatory factors must be considered.  *Lauxman v. Astrue*, No.

08-6177, 2009 WL 997401, at *1-2 (10th Cir. April 15, 2009) (unpublished).  The ALJ's

failure to adequately consider these opinions, as in this case, requires that the case be

remanded.  *Knight*, 2010 WL 2853668, at *3.

Further as to RFC, where a treating physician gives specific work-related

functional limitations, those opinions are medical opinions entitled to controlling weight.

*Krauser*, 638 F.3d at 1330-32; *see also Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir.

2005).  They are not opinions as to RFC; instead, they are medical findings that the ALJ

must determine the consequences of for purposes of the RFC, "i.e., that with those

limitations, Mr. Krauser would not be able to perform sedentary work."  *Krauser*, 638

F.3d at 1332.  The *Krauser* Court further explained:

> That is precisely how the inquiry should proceed, with the treating physician
> perform performing her medical role and the ALJ left to his role as
> adjudicator. Of course the medical findings as to work-related limitations
> would, if accepted, impact the ALJ's determination of RFC—they always do,
> because that is what they are for—but that does not make the medical
> findings an impermissible opinion on RFC itself. If doctors could only give
> opinions on matters that could not affect RFC, medical opinions would be
> inherently useless in disability determinations.

*Id*.  In this case, Dr. Rivadeneira made medical findings which impact the RFC that must

be assessed under the controlling weight standard.

Finally on this issue, the Commissioner argues that Dr. Rivadeneira consistently recommended conservative treatment (medication), which was effective in controlling her symptoms. He also argues that the record reflects that Dr. Rivadeneira's opinions were out of proportion with his objective medical findings. These are *post hoc* arguments for why Dr. Rivadeneira's opinions should not be given controlling weight or deference. Accordingly, these arguments are improper and cannot be considered by this Court. *Robinson*, 366 F.3d at 1084. As noted in *Robinson*, "[a]ffirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.'" *Id.* at 1084-85 (quotation omitted).

Based on the foregoing, I find that this case must be remanded for a proper weighing and consideration of the treating physician's opinions. The ALJ must conduct the proper two-step analysis as to Dr. Rivadeneira's medical opinions and must also properly weigh Dr. Rivadeneira's opinions on issues reserved to the Commissioner. If the ALJ chooses not to give weight to Dr. Rivadeneira's opinions, he must state specific, legitimate reasons for doing so.

2.      Whether the ALJ Erred at Step Two In Not Considering the
        Opinions of the Stage Agency Psychologists

I now turn to Plaintiff's argument that the ALJ erred in not discussing or considering the opinions of two State agency reviewing psychologists. Plaintiff argues that this resulted in error at step two in connection with the ALJ's finding that Plaintiff's mental impairment was not severe.

The State agency psychologists each completed a detailed functional assessment regarding Plaintiff's specific limitations. (Tr. 484-486, 510-512.) The two opinions are very similar — indeed, they are identical in most respects. The psychologists determined that Plaintiff is "moderately limited" in the following functional areas: the ability to maintain attention and concentration for extended periods (*id.* 484, 510); the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (*id.* 485, 511); and the ability to accept instructions and respond appropriately to criticism from supervisors. (*Id.*) Additionally, Dr. Williams opined that Ms. Gaskell "is able to understand and remember simple three-step directions," that she "has some deficits in sustained concentration, the claimant is able to sustain sufficient attention to complete simple routine tasks for a two-hour period at a non-production pace," and that "[she] would be capable of performing SRRT' in a low production, low stress environment." (*Id.* 486.)[2]

These findings directly contradict the ALJ's determination that Plaintiff's mental impairment "is nonsevere." (*Id.* 14.) *See* 20 C.F.R. §§404.1520a(d)(1), 416.920a(d)(1) (impairment that causes no more than "mild" limitation is not "severe" - here there were "moderate" limitations). Further, a claimant must make only a de minimus showing of impairment to advance beyond step two of the analysis. *Langley v. Barnhart*, 373 F.3d

---

[2] Subsequently, Dr. Albertson stated that Plaintiff "is able to concentrate and attend to tasks in order to perform simple, routine tasks," that she can "interact appropriately socially with a supervisor in order to perform simple, routine tasks," and that she "is able to do simple, routine, repetitive tasks in a low stress setting." (*Id.* 512.)

1116, 1123 (10th Cir.2004). As noted by another court, moderate difficulties in functioning are "'significant' in the relevant sense that those difficulties have more than a *de minimus* impact on plaintiff's ability to perform work-related activities, and thus constitute probative evidence of potential disability." *Hartje v. Astrue*, No. C09-5486KLS, 2010 WL 3220615 at *12 n. 6 (W.D. Wash. Aug. 13, 2010) (unpublished); *see also Pereira v. Comm'r of Social Sec.*, No. 2:08-CV-3897(WJM), 2009 WL 1298415, at *4 (D.N.J. May 8, 2009) (unpublished) (evidence of treatment for depression along with evidence that claimant had difficulty in maintaining concentrations, persistence, or pace, as well as moderate limitations in her ability to respond to changes in the work setting were "more than enough to satisfy step two's *de minimus* threshold.") The findings of the State agency psychologists also contradict the ALJ's finding that Plaintiff does not have functional limitations in any of the four relevant areas. (Tr. 14.)

I agree with Plaintiff that the ALJ erred in not addressing the evidence from the State agency psychologists, as the evidence is significant at step two as to her mental impairments. "[T]he regulations require the ALJ to 'consider all evidence in [the] case record when [he] makes a determination or decision whether [claimant is] disabled,' 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3), and this court requires the ALJ to discuss 'the significantly probative evidence he rejects.'" *Carpenter v. Astrue*, 537 F.3d 1264, 1266(10th Cir. 2008) (quotation omitted). "Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'" *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quotation omitted).

Here, the ALJ found that Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in [her] ability to perform basic mental work activities and is therefore nonsevere." (Tr. 14.) He also found that Plaintiff had no limitations in the four functional areas set out in the disability regulations for evaluating mental disorders. (*Id.*) The ALJ did not state what evidence he relied on in making these findings, and they are contrary to the findings of the State agency psychologists. The ALJ's failure to address the opinions of these psychologists is particularly significant, because, if accepted, their assessed limitations may preclude the performance of Plaintiff's past relevant work, as discussed in section II.B.4, *infra*.[3]

Further, while the ALJ stated that he considered and weighed the opinions of the State agency medical consultants (Tr. 19), he did not state what weight, if any, he gave to the opinions of the State agency psychologists, why he appeared to reject their opinions, or how he resolved the conflict in the evidence on this issue. Further, he did not even state what evidence he relied on in reaching his opinion regarding Plaintiff's mental impairments. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999) ("It is axiomatic that all of the ALJ's required findings [including the RFC] must be supported by substantial evidence."). I am thus unable to meaningfully review the ALJ's decision and remand is also required on this issue.

---

[3] While the Commissioner argues that Dr. Roth's opinion supports the ALJ's findings, the ALJ did not discuss or give weight to that opinion in his decision and this is another improper post hoc rationale. Further, I note that Dr. Roth was asked to consider Plaintiff's cognitive impairments, not depression, and Dr. Roth did not consider many of the areas addressed by the State agency psychologists.

The facts of this case are similar to that discussed in the *Carpenter* case. As in this case, the ALJ in *Carpenter* "summarized the evidence from two mental health practitioners" but "failed to discuss all of the significantly probative evidence relevant to [the claimant's] mental impairment, discuss how he resolved the conflicts in this evidence, or discuss how he resolved the conflicts between his findings and the evidence." *Id.,* 537 F.3d at 1269. The court found error with this as "[t]he ALJ must evaluate 'all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation.'" *Id.* (quoting 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1)).

On remand, the ALJ must properly consider and weigh the opinions of the State agency psychologists. The ALJ must also reassess whether Plaintiff has a severe mental impairment at step two, and must clearly state what evidence he or she is relying on in reaching the findings.

### 3. Whether Error Was Committed At Step Three and as to the RFC

I next address Plaintiff's argument that the ALJ erred at step three. "'At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity.'" *Drapeau v. Massanari*, 255 F.3d 1211, 1212 (10th Cir. 2001) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996) (further quotation omitted)).

Here, the ALJ stated at step three that he "considered the listings under section 14.00 (immune-system-adult)" and found that while Plaintiff "has systemic lupus

erythematosus and lupus nephritis Class III, she does not have a listing level impairment." (Tr. 14.)  The ALJ gave no explanation for this finding and cited no evidence which either supported or detracted from his decision.  I agree with Plaintiff that the ALJ erred in failing to explain the evidence that supported his decision.  This is particularly true given the fact that Plaintiff's medical records are replete with descriptions of significant pain and limitations affecting multiple joints, persistent and chronic skin lesions, as well as progressively worsening kidney function.  Further, Dr. Rivadeneira has repeatedly opined that her SLE and resulting constitutional symptoms are sufficiently severe as to be totally disabling.  This error also requires a remand to the ALJ to make adequate findings on this issue.

I find the *Clifton* case instructive on this issue.  There, the Tenth Circuit found error at step three where the ALJ failed to discuss the evidence and explain why he found that the claimant was not disabled.  *Clifton*, 79 F.3d at 1009.  The conclusory finding of the ALJ was "beyond meaningful judicial review" *Id.  Clifton* also held:

> In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that appellant's impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion. The record must demonstrate that the ALJ considered all of the evidence. . . .

*Id.* Accordingly, the *Clifton* court remanded for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence at step three." *Id.* at 1010.  The same rationale applies in this case.

The error at step three is compounded by the fact that the Appeals Council failed to adequately consider the new opinion of treating physician Dr. Rivadeneira that was submitted to it and made part of the administrative record.  (Tr. 5.)  Since the Appeals Council accepted this evidence, "'that is 'an implicit determination [that it is] ... qualifying new evidence," requiring the Appeals Council to consider it and this court to include it in our review of the ALJ's decision, without separate consideration of the requirements for qualification."  *Krauser*, 638 F.3d at 1328 (quoting *Martinez v. Barnhart,* 444 F.3d 1201, 1207–08 (10th Cir.2006)).

In Dr. Rivadeneira's letter, dated November 24, 2009, he stated that "[i]t is my professional opinion that this patient is disabled by her SLE and at the time unable to work in any capacity on a regular and continuing basis."  (Tr. 669.)  He also elaborated on the medical basis for that opinion.  In addition, Dr. Rivadeneira expressed a new opinion that he had not previously provided; namely, that Plaintiff "meets disability criteria as outlined in the Social Security listing 14.02."  (Tr. 669.)  This opinion directly contradicts the ALJ's finding that Plaintiff "does not have a listing level impairment."  (*Id.* 14.)  Thus, there is a reasonable probability that this evidence would have changed the ALJ's decision.

Although the Appeals Council incorporated this new evidence into the record, it did not explicitly discuss it.  This was error which requires a remand.  *See Harper v. Astrue*, No. 10-5136, 2011 WL 2580336 (10th Cir. June 30, 2011) (unpublished).  In *Harper*, as here, the plaintiff submitted to the Appeals Council new opinions from the treating physician which expanded on his opinion of Harper's ability to work.  *Id.* at *2.

The Appeals Council made these records part of the administrative record. *Id.* Also as in this case, the Appeals Council "did not conduct any treating physician analysis in its decision denying Harper's request for review; it merely stated the new evidence, including the opinions of Dr. Farish, 'does not provide a basis for changing the [ALJ's] decision.'" *Id.* (quotation omitted). The Tenth Circuit held that since neither the Appeals Council nor the ALJ evaluated the treating physician's new opinions, the "failure requires a remand . . . for further evaluation of Dr. Farish's medical opinions and their effect on the determination of disability in light of" the evidence of record. *Id.* at *3. Similarly, in this case, a remand is appropriate so that the opinions of Dr. Rivadeneira can be considered and weighed in regard to step three, RFC, and the determination of disability.

Plaintiff also asserts that the ALJ improperly determined in the RFC that Plaintiff has no nonexertional impairments despite voluminous and substantial evidence to the contrary. Instead, the ALJ found that Plaintiff can perform the "full range of light work." (Tr. 15.) I am unable to determine from the record whether the ALJ considered the medical evidence that supports the existence of the nonexertional impairments outlined by Plaintiff, including but not limited to fatigue, shortness of breath on exertion, intolerance for prolonged sitting, standing and walking, skin sensitivity impacted by fluorescent lights, headaches, depression, difficulty sleeping, anxiety, and difficulty maintaining attention and focus, particularly during flares of her SLE. Dr. Rivadeneira's opinions are particularly relevant to these impairments which were, as noted previously,

not adequately weighed and considered by the ALJ.  Accordingly, I find that a remand is also appropriate for a proper assessment of this issue.

In finding that a remand is appropriate as to the nonexertional impairments, I agree with Plaintiff that these impairments may well impact her ability to work.  For example, the Tenth Circuit has held that an ALJ errs when he fails to consider allegations of fatigue and similar limitations.  *Clark v. Barnhart*, No. 02-5093, 2003 WL 1909289, at *2-4 (10th Cir. April 22, 2003) (unpublished) (citing *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (remanding where ALJ ignored claimant's allegations of severe fatigue, weakness and swelling, which her condition would reasonably be expected to produce)); *see also Romero v. Astrue*, No. 06-6305, 2007 WL 2110899, at *2 (10th Cir. 2007) (unpublished) (finding that "Dr. Haddock's conclusions concerning Ms. Romero's pain and limitation. . . find support in the treatment records and therefore could not be cursorily dismissed for the reason the ALJ gave: lack of medical evidence . . . .The record is replete with evidence that Ms. Romero experiences difficulties with both standing and walking. . . .")

I also note on the issue of nonexertional impairments that the ALJ stated that "[t]he evidence that the claimant had not been entirely compliant in taking prescribed medications, suggests that the symptoms may not have been as limiting as the claimant has alleged."  (Tr. 19.)  Thus, the ALJ appeared to reject many of the symptoms or impairments noted by Plaintiff based on this finding.  However, the ALJ did not conduct the analysis required in order to find that a claimant failed to comply with treatment. *See Fuller v. Astrue*, No. 10-2037-JWL, 2011 WL 209527, at *17 (10th Cir. Jan. 21,

2011) (unpublished) (citing *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993)). This also was error.

Finally, I agree with Plaintiff that the ALJ erred in not considering or discussing the evidence from her former supervisor.  This evidence was not cumulative and appeared highly probative of Plaintiff's ability to work and RFC.  That supervisor explained that "I have witnessed her being absent due to Lupus more than several times during her time with us.  Her condition sometimes was debilitating enough that she had to leave work early or perhaps not come in at all.  Sometimes she would use a stool, rather than stand, so that she could rest from working.  We also worked around her better times of day like in the afternoons, so that she could fit in some hours . . . Part-time work was a challenge for her, even on her good days."  (Tr. 225.)

While an ALJ is not required to make specific written findings about each witness's credibility, that rule applies only "only if 'the written decision reflects that the ALJ considered the testimony.'"  *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) (quoting *Adams v. Chater,* 93 F.3d 712, 715 (10th Cir. 1996)).  Here, the ALJ's decision does not reflect that the ALJ considered the former supervisor's testimony when assessing Plaintiff's RFC.  This evidence appears to be uncontroverted and was also relevant as indicative of an unsuccessful work attempt.  *See Hierstein v. Chater*, No. 96-6233, 1997 WL 158177, at *3 (10th Cir. April 2, 1997) (unpublished); *Washington v. Shalala*, 37 F.3d 1437, 1441 (10th Cir. 1994).  Accordingly, I find that the ALJ erred in not discussing the supervisor's testimony and that this case must be remanded for the ALJ to properly assess this evidence.  *Blea*, 466 F.3d at 915.

4.     Whether the ALJ Erred at Step Four

Finally, Plaintiff argues that the ALJ's failure to consider or address the opinions of the state agency psychologists are particularly significant, because, if accepted, their assessed limitations preclude the performance of Plaintiff's past relevant work.  I now turn to that issue.

The ALJ ultimately denied Plaintiff's claim at step four based on a determination that Plaintiff could return to her past work as a receptionist "as generally performed in the national economy."  (Tr. 20.)  The ALJ apparently relied upon the U.S. Department of Labor *Dictionary of Occupational Titles* ["DOT"] to determine the requirements of the receptionist occupation, since there was not any vocational expert testimony on this issue.  See 20 C.F.R. §404.1560(b)(2) ("we may use … resources such as the "Dictionary of Occupational Titles" … to help us determine whether you can do your past relevant work, given your residual functional capacity").

The State agency psychologists limited Plaintiff to "simple, routine" and "repetitive" tasks".  (Tr. 486, 512-13.)  This appears to be inconsistent with the reasoning level and occupational skill-level of the receptionist occupation as described in the DOT.  According to the DOT, the occupation of receptionist has the following specific vocational preparation ("SVP") and General Educational Development ("GED") levels:  SVP level 4, Reasoning level 3, Math level 2, Language level 3.[4]  Courts have

---

[4]  Each element of GED is expressed in a numerical value (from 1-6), with higher values corresponding to greater requirements of proficiency in that area.  The descriptions of the Reasoning, Math and Language GED levels from one (1) through three (3) are attached to Plaintiff's Opening Brief as Exhibit A.

repeatedly found that a limitation to simple, routine tasks is inconsistent with reasoning

levels two or three, let alone the reasoning level 4 required of a receptionist. *See*

*Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005) (finding that claimant "retains the

attention, concentration, persistence and pace levels required for simple and routine

work tasks" was "inconsistent with the demands of level-three reasoning"); *Lucy v.*

*Chater*, 113 F.3d 905, 909 (8th Cir. 1997) (finding that level-two reasoning required

"more than the mental capacity to follow simple instructions."); *Monaghan v. Astrue*, No.

07-cv-02655-WYD, 2009 WL 1973513, at *12 (D. Colo. July 8, 2009) (reversing ALJ's

decision that the claimant could perform occupations with GED reasoning levels of 3

when the claimant was limited to "simple, repetitive work activity," as reasoning level

one is the only level that allows for "simple" reasoning).

 Also, the DOT classifies a receptionist position as a semiskilled occupation. 20

C.F.R. §§ 404.1568, 416.968. It appears that Plaintiff could not perform that occupation

if the ALJ accepts the State agency psychologists finding that Plaintiff is limited to

simple and routine tasks. Work involving tasks that are "simple" and "routine" is

generally classified as unskilled work. 20 C.F.R. § 404.1568(a) ("[u]nskilled work is

work which needs little or no judgment to do simple duties that can be learned on the

job in a short period of time");SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996) (stating

that "competitive, remunerative, unskilled work generally requires, among other things,

the ability of "[u]nderstanding, remembering, and carrying out simple instructions" and

"[m]aking judgments that are commensurate with the functions of unskilled work--i.e.,

simple work- related decisions"); *Mangold v. Chater*, No. 93-1320-FGT, 1995 WL

580099, at *4 (D. Kan 1995) (unpublished) (referencing testimony of a vocational expert that "a restriction to simple, routine work would eliminate any semiskilled work"). On the other hand, I am unaware of any authority which equates simple, routine tasks with semiskilled work, particularly the upper SVP level 4 which is the skill-level of Plaintiff's past relevant work.

These issues must also be adequately addressed on remand. The ALJ must consider and weigh the State agency psychologists' opinions. If he accepts those opinions, the ALJ should obtain vocational expert testimony regarding whether an individual with the mental limitations that the State agency psychologists have opined to would be able to perform Plaintiff's past relevant work as a receptionist.

III.     CONCLUSION

Based upon the foregoing, I find that the ALJ did not properly weigh the treating physician's opinions as well as other relevant evidence, including the opinions of the State agency psychologists and the testimony of Plaintiff's former supervisor. I also find that the ALJ erred at steps two and three and in assessing RFC. Further, the ALJ's step four findings do not appear to be supported by substantial evidence. Accordingly, this case must be remanded to the Agency for further fact finding on these and the other issues discussed in this Order. It is therefore

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding pursuant to sentence four in 42 U.S.C. § 405(g).

Dated September 20, 2011

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge